IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LEON FRENKEL, | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| KENNETH H. BAKER, *et al.*, | : | |
|     Defendants. | : | No. 13-5880 |
| | : | |

## MEMORANDUM

Schiller, J.                                                                              January 13, 2015

Defendants Baker Enterprises of Polk County, Inc., The Baker Group, and New Life Church of Wauchula, Inc. (the "Baker Defendants") move for relief under Federal Rule of Civil Procedure 60(b) from the default judgment entered against them. For the reasons provided below, the Court denies this motion.

### I. BACKGROUND

Leon Frenkel commenced this action against nearly a dozen defendants in October of 2013, alleging that two overlapping conspiracies defrauded him of $500,000. Very few Defendants answered or appeared. This Court granted a partial default judgment against most of the non-answering Defendants on November 4, 2014.

Counsel for the Baker Defendants, Craig Huffman, entered his appearance on September 29, 2014, and this Court granted his application to appear pro hac vice the following day. At that time, default had already been entered against each of the Baker Defendants, and Plaintiff's Application for Default Judgment and Supplemental Memorandum of Law had already been filed and served. This Court granted the default judgment against the Baker Defendants on

November 4, 2014, more than a month after Mr. Huffman first appeared and nearly four months after the application had been filed. *See Frenkel v. Baker*, Civ. A. No. 13-5880, 2014 WL 5697449 (E.D. Pa. Nov. 4, 2014). During that time, Mr. Huffman filed nothing with the Court: no responsive filings, no cross-claims or counterclaims, no motions, no requests for extensions, no stipulations, no phone calls, and no letters. According to Plaintiff's counsel, Mr. Huffman also made no attempt to communicate with opposing counsel during this time. (Mem. of Law in Supp. of the Resp. of Pl. Leon Frenkel in Opp. to the Mot. to Set Aside Default [Pl.'s Resp.], at 2.) Instead, Mr. Huffman waited until twenty days after this Court's entry of default judgment against his clients to file anything at all. The Baker Defendants blame their tardy participation in this case on: (1) the constant promises of a codefendant, Omar Fitzgerald, that he was planning to settle all pertinent debts with Plaintiff, and (2) logistical and financial difficulties in finding, retaining, and getting their Florida attorney admitted pro hac vice.

## II.  LEGAL STANDARD

Rule 60(b)(1) permits the court to relieve a party from a final judgment if that party can show "mistake, inadvertence, surprise, or excusable neglect." The purpose of this rule "is to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice must be done." *Boughner v. Sec'y of Health, Educ. & Welfare*, 572 F.2d 976, 977 (3d Cir. 1978). "The test for 'excusable neglect' is equitable, and requires [the Court] to weigh the 'totality of the circumstances.'" *Nara v. Frank*, 488 F.3d 187, 193-94 (3d Cir. 2007). The Court specifically must consider the following four factors: "(1) the danger of prejudice to the other party; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay—and whether it was within the movant's control; and (4) whether the

movant acted in good faith." *Id*. at 194 (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)); *see also In re Cendant Corp. PRIDES Litig.*, 235 F.3d 176, 182 (3d Cir. 2000) (stating that consideration of the four *Pioneer* factors is mandatory). Parties may be penalized for the actions and omissions of their attorneys under this standard. *Pioneer Inv. Servs. Co.*, 507 U.S. at 396.[1]

## III. DISCUSSION

Because the situation plainly does not qualify as mistake, inadvertence, or surprise under Rule 60(b)(1), the Court considers the *Pioneer* factors for excusable neglect. The Court concludes that the Baker Defendants have not shown excusable neglect and therefore do not qualify for relief under Rule 60(b)(1).

### A. Danger of Prejudice to Plaintiff

The first factor is the danger of prejudice to the non-moving party, in this case Frenkel, if the Court were to grant relief under Rule 60(b). Frenkel has expended considerable time and resources on this case—largely without the benefit of a response of any kind from any of the Baker Defendants—and he would have to expend more time and resources if the Court were to

---

[1] As noted by the Baker Defendants, the Third Circuit additionally requires this Court to consider the following factors in determining whether to grant a Rule 60(b) motion for relief: "(1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; [and] (3) whether the default was the result of the defendant's culpable conduct." *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984). In that case, the threshold issue was that the defendant had not established a meritorious defense. *Id*. at 196-97.

In this case, the Court does not reach the *$55,518.05 in U.S. Currency* factors because the dispositive issue is whether the Baker Defendants have satisfied the text of Rule 60(b)(1) at all—namely, whether they have proven the "mistake, inadvertence, surprise, or excusable neglect" necessary for relief. Although it was their burden, the Baker Defendants have not submitted an argument on this point, or on the *Pioneer* factors listed above. The caselaw is not completely clear on how the *Pioneer* factors fit with the *$55,518.05 in U.S. Currency* factors, but *$55,518.05 in U.S. Currency* significantly predates *Pioneer*. As the *Pioneer* factors are also dispositive here, the Court considers only those factors in depth.

3

reopen the case. However, "[d]elay in realizing satisfaction on a claim rarely serves to establish the degree of prejudice sufficient to prevent the opening [of] a default judgment entered at an early stage of the proceeding." *Feliciano v. Reliant Tooling Co., Ltd.*, 691 F.2d 653, 656-57 (3d Cir. 1982). It is also possible that this Court could ameliorate any risk of prejudice through the "power under Rule 60(b) to impose terms and conditions upon the opening of a judgment." *Id*. at 657. Thus, this factor weighs in favor of granting relief under Rule 60(b).

   B.   **Length of Delay and Impact on Judicial Proceedings**

At a minimum, the Baker Defendants have been aware of this lawsuit since Defendant Baker—the undisputed individual who controls the Baker Defendants—filed his pro se Answer on June 20, 2014. Frenkel's motion for default judgment was filed on July 11, 2014, with a supplemental memorandum filed on July 30, 2014. The Baker Defendants have been represented by counsel in this matter since September 30, 2014. This Court entered default judgment against the Baker Defendants on November 4, 2014. The Baker Defendants filed their motion for relief under Rule 60(b) on November 24, 2014.

The length of the delay must first be considered in "absolute terms." *In re Cendant Corp.*, 235 F.3d at 183. In this case, the absolute length of the delay does not weigh heavily on one side or the other. The delay between the entry of judgment and the motion for relief is only twenty days. The delay between the appearance of Mr. Huffman and the entry of judgment is slightly greater—over a month. Accepting without examination the Baker Defendants' excuses that the delay prior to Mr. Huffman's admission in this matter occurred because of financial and other logistical difficulties,[2] this month is the key period for this motion. In absolute terms, one month

---

[2] This Court also notes that a conservative estimate of the time during which the Baker Defendants knew about the case and filed nothing with this Court was nearly five months.

can be called insignificant under some precedent, *id.* at 183, and highly significant under others, *Nara*, 488 F.3d at 194.

Under the second *Pioneer* factor, the important inquiry in this case is therefore the impact of that months' delay on the judicial proceedings. Had Mr. Huffman done anything at all in that month, even made a simple request for an extension of time, this Court would not have entered a default judgment against the Baker Defendants. For example, this Court did not enter default judgment against Defendant Kenneth Baker for the simple reason that he had filed an Answer to the First Amended Complaint, however untimely. The impact on these proceedings of the Baker Defendants' delay in communicating anything to the Court, therefore, was great.

### C. Reason for Delay Within Defendants' Control

The Baker Defendants claim that they defaulted because of (a) the actions and representations of one of their codefendants, Omar Fitzgerald, and (b) logistical difficulties in getting their attorney, a member of the Florida bar, admitted pro hac vice with appropriate malpractice insurance. The Baker Defendants do not deny that they had knowledge of the case throughout the litigation. The Court finds that the Baker Defendants' delay was entirely within their control.

The Baker Defendants claim that Fitzgerald made many representations to them that he was in the process of settling Plaintiff's claims, on the condition that Fitzgerald not "be included as any at fault parties in any documents filed with the Court if settlement were to occur," and that this deterred the Baker Defendants from answering the First Amended Complaint. (Mot. for Relief at 5-7.)

Although the Baker Defendants could not control Fitzgerald's conduct, they did control their own conduct in response to it. The decision to do nothing at all in response to the First

Amended Complaint, served on the Baker Defendants in April and May of 2014, kept the Court in the dark as to the status of the Baker Defendants. Moreover, the Baker Defendants have not submitted any evidence regarding their attempts to find and retain an attorney, or their efforts to find local counsel and insurance for Mr. Huffman's pro hac vice admission. It appears from the 60(b) motion that the main reason for the extensive delay between receiving the First Amended Complaint and finally communicating with this Court—in the form of the 60(b) motion itself— was not any logistical or financial barrier, but the decision to trust that Fitzgerald would magically make the case disappear. Misplaced trust in a codefendant is not a reason to ignore formal court proceedings. The logistical challenges of having an out-of-state attorney admitted pro hac vice likewise do not excuse the Baker Defendants' failure to file anything until more than a month after this Court granted Mr. Huffman pro hac vice status.

This factor weighs heavily against the Baker Defendants' request for relief. *See, e.g.*, *Nara*, 488 F.3d at 194 (finding an unexplained failure to respond to a district court's order for seventeen days, and failure to object to the related magistrate's report and recommendation for over six weeks, inexcusable negligence in a Rule 60(b) context).

### D. Defendants' Good Faith

The Third Circuit has described "good faith" as acting "with reasonable haste to investigate the problem and to take available steps toward a remedy." *In re Cendant Corp.*, 235 F.3d at 184. At the time Mr. Huffman was admitted pro hac vice, he should have been able to see the entire electronic docket in this case. Further, his clients were properly served with every document Frenkel filed up until that point, from the First Amended Complaint to the Application for Default and Supplemental Memorandum of Law. When Mr. Huffman finally appeared, the axe was already hanging over his clients. Any reasonably attentive attorney should have

6

understood the need to act quickly in that situation. Although Mr. Huffman may not have acted in bad faith, he also did not act in good faith.

### E. Totality of the Circumstances

Altogether, the Court finds that the Baker Defendants have not shown "excusable neglect" sufficient to qualify for relief under Rule 60(b)(1). The delay in the Baker Defendants' participation in the litigation of this case was not negligible; it was almost entirely within the Defendants' control; and—not surprisingly—it had an impact on these judicial proceedings. The Baker Defendants did not act in good faith. As in *Nara*, these Defendants' "overall negligence in handling the matter" persuades the Court to deny their motion for relief. 488 F.3d at 194.

## IV. CONCLUSION

For the foregoing reasons, the Court denies the Baker Defendants' motion for relief under Rule 60(b). An Order consistent with this Memorandum will be docketed separately.